# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MIRANDA L. PANDA, | : | CIVIL ACTION NO. 2:18cv1159 |
| 816 Congress St. | : | |
| Marion, OH 43302, | : | |
| | : | JUDGE |
| and | : | |
| | : | |
| BRITTANY M. WALTERS | : | MAGISTRATE JUDGE |
| 10111 Allen Rd. | : | |
| Pickerington, OH 43147, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | **COMPLAINT** |
| SHANA M. KECKLEY, in her | : | |
| individual capacity as a | : | |
| Columbus Police Vice Unit Detective, | : | |
| City of Columbus, Division of Police | : | |
| 120 Marconi Blvd. | : | |
| Columbus, OH 43215, | : | |
| | : | |
| and | : | |
| | : | |
| WHITNEY R. LANCASTER, in his | : | |
| individual capacity as a | : | |
| Columbus Police Vice Unit Lieutenant, | : | |
| City of Columbus, Division of Police | : | |
| 120 Marconi Blvd. | : | |
| Columbus, OH 43215, | : | |
| | : | |
| and | : | |
| | : | |
| MARY S. PRAITHER, in her | : | |
| individual capacity as a | : | |
| Columbus Police Vice Unit Detective, | : | |
| City of Columbus, Division of Police | : | |
| 120 Marconi Blvd. | : | |
| Columbus, OH 43215, | : | |
| | : | |
| and | : | |
| | : | |

| | |
|---|---|
| STEVEN G. ROSSER, in his | : |
| individual capacity as a | : |
| Columbus Police Vice Unit Detective, | : |
| City of Columbus, Division of Police | : |
| 120 Marconi Blvd. | : |
| Columbus, OH 43215, | : |
| | : |
| and | : |
| | : |
| JOHN OR MARY DOE 1, in his or her | : |
| individual capacity, | : |
| City of Columbus, Division of Police | : |
| 120 Marconi Blvd. | : |
| Columbus, OH 43215, | : |
| | : |
| and | : |
| | : |
| JOHN OR MARY DOE 2, in his or her | : |
| individual capacity, | : |
| City of Columbus, Division of Police | : |
| 120 Marconi Blvd. | : |
| Columbus, OH 43215, | : |
| | : **JURY DEMAND ENDORSED HEREON** |
| Defendants. | : |

## I. Preliminary Statement

1. This case seeks compensatory and punitive damages, declaratory, injunctive, and equitable relief, costs, and attorneys' fees for the false arrest, malicious prosecution, civil conspiracy, and defamation, and, alternatively, abuse of process, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and/or the common law of the State of Ohio, committed when Columbus Division of Police ("CDP") Vice Unit members and other CDP employees (a) searched and seized Miranda L. Panda ("Ms. Panda") and Brittany M. Walters ("Ms. Walters"), who worked at Sirens Gentlemen's Club ("Sirens"), without probable cause and initiated a prosecution in order to further their civil conspiracy to retaliate against the political expression and activities of Stephanie Clifford ("Ms. Clifford") by concealing their

retaliatory motive; and/or (b) falsely insinuated to the media and the public that Ms. Panda and Ms. Walters had been engaged in prostitution, human trafficking, or vice related violations.

**II.      Jurisdiction and Venue**

2.      Jurisdiction over claims brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, is conferred on this Court by 28 U.S.C. §§ 1331 (federal question); 1343 (civil rights), and jurisdiction over the state claims is conferred by 28 U.S.C. § 1367 (supplemental jurisdiction).

3.      Declaratory, injunctive, and equitable relief, and compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1983; the common law of the State of Ohio; and 28 U.S.C. §§ 2201; 2202.

4.      Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. § 1988, the common law of the State of Ohio, and Fed. R. Civ. P. 54.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and S.D. Ohio Civ. R. 82.1(b), because the events giving rise to this action occurred in Franklin County, Ohio, where Defendants serve as CDP Vice Unit members or in other CDP employment.

**III.     Parties**

6.      Plaintiff Miranda Panda ("Ms. Panda"), a single mother of two and a resident of Marion County, Ohio, at all times material to this Complaint, was employed as a cocktail waitress by Sirens; and, prior to her arrest, was a private figure who had neither sought publicity nor been voluntarily engaged in a matter which had been publicized.

7.      Plaintiff Brittany Walters ("Ms. Walters"), is a single womanwith no criminal record and a resident of Franklin County, Ohio, at all times material to this Complaint, worked at Sirens, and, prior to her arrest, was a private figure who had neither sought publicity nor been voluntarily engaged in a matter which had been publicized.

8. Defendants (collectively, "Defendant Officers") Shana Keckley ("Defendant Keckley"), Whitney Lancaster ("Defendant Lancaster"), Mary Praither ("Defendant Praither"), Steven Rosser ("Defendant Rosser"), and John or Mary Doe 1 ("Defendant Doe 1) are being sued in their individual capacity; and were, at all times material to this Complaint, employees of the CDP Vice Unit ("Vice Unit") located in Franklin County, Ohio, and "persons" under 42 U.S.C § 1983 acting under color of law.

9. Defendant John or Mary Doe 2 ("Defendant Doe 2") is a police officer, spokesperson, and/or social media account administrator for the CDP whose identity is not currently known; is being sued in his or her individual capacity; and was, at all times material to this Complaint, an employee of the CDP, located in Franklin County, Ohio, and a "person" under 42 U.S.C § 1983 acting under color of law.

**IV.    Facts**

10. On July 11, 2018, Ms. Clifford, an adult-film star and exotic dancer who goes by the screen and stage name of "Stormy Daniels," was scheduled to appear at Sirens in Columbus, Ohio around 10:00 p.m.

11. Ms. Clifford is known for her controversial and contentious relationship with the President of the United States of America, Donald John Trump ("President Trump"), with whom she alleged she had a sexual affair in 2006.

12. Ms. Clifford has frequently spoken out against President Trump, making statements that she had a sexual affair with him less than four months after his current wife, Melania Trump, gave birth to their youngest son and that President Trump's lawyer, Michael Cohen, paid her one-hundred and thirty-thousand dollars ($130,000) to not say anything about the affair during President Trump's presidential campaign.

13. A group of officers from the Vice Unit, including Defendant Officers, were strong supporters of President Trump.

14. Defendant Keckley is a registered Republican voter in Ohio.

15. Defendant Praither is a registered Republican voter in Ohio.

16. Defendant Rosser is a known Republican who supports President Trump.

17. Prior to July 11, 2018, Defendant Rosser maintained a Facebook profile, under the alias of "Stevo Shaboykins," which regularly posted supporting images for President Trump such as, "Cops for Trump Pence Make America Great Again," "Keep your Elephant Keep your Donkey We Have a Lion (Trump)," and "So Trump is mentally ill…he built a multi-billion dollar empire that spread across the world, was able to beat 17 of the best and brightest Republican candidates, turns around to beat the 'most qualified woman of our time' for the presidency, then in his first year in office causes the stock market to climb to heights never seen before in history, lowered unemployment, almost wiped out ISIS, restoring law and order, all while working with a hostile Congress and the media attacking him 24/7? Perhaps we need more mentally ill people."

18. In July of 2018, Defendant Officers were aware of Ms. Clifford's impending visit to Sirens.

19. Defendant Officers believed that the public statements made by Ms. Clifford had been politically damaging to President Trump.

20. Defendant Officers entered into a conspiracy to arrest Ms. Clifford at her performance in Columbus as an act of revenge for her statements made about President Trump.

21. In addition to taking revenge against Ms. Clifford, Defendant Officers believed arresting Ms. Clifford would cause damage to Ms. Clifford's credibility about her allegations against President Trump, and made that damage another objective of their conspiracy.

22. Defendant Officers determined between themselves in advance of Ms. Clifford's performance at Sirens that she would be arrested and charged with a violation of R.C. 2907.40.

23. In the event that Ms. Clifford did not meet all of the elements of R.C. 2907.40, Defendant Officers determined in advance that they would either fabricate the offense's elements or deliberately omit elements on any criminal complaint alleged against her.

24. Defendant Officers also determined in advance they would arrest at least two other individuals working at Sirens on July 11 for a violation of R.C. 2907.40 as a cover for their arrest of Ms. Clifford.

25. Specifically, Defendant Officers believed that, by arresting at least two other employees, they could deny that they arrested Ms. Clifford for political reasons.

26. In the event that some or all of the individuals arrested as a cover for the arrest of Ms. Clifford did not meet all of the elements of R.C. 2907.40, Defendant Officers determined in advance that they would either fabricate offense elements or deliberately omit the elements on any criminal complaints filed against such individuals.

27. Defendant Keckley performed extensive research on Ms. Clifford and her performance schedule prior to her appearance at Sirens.

28. E-mails sent from Defendant Keckley's personal account to her work account contained screenshots of an article announcing the event, a picture of Ms. Clifford and President Trump together, a link to a YouTube video where Ms. Clifford received the keys to West Hollywood, and a screenshot of the location of Sirens on a map.

29. On July 11, 2018, the night of Ms. Clifford's scheduled appearance at Sirens, Defendant Officers attended the event undercover on behalf of the Vice Unit, paying a seventy-five dollar ($75) cover charge each to get V.I.P. access to Ms. Clifford in advance of her performance.

30. At Sirens, several of the Defendant Officers sat in a booth together, while other Defendant Officers were posted at other locations.

31. Several of the Defendant Officers were drinking alcoholic beverages while on the job, spending a total of one-hundred and twenty-nine dollars ($129) of taxpayer money on such beverages, and six-hundred and thirty-nine dollars ($639) of taxpayer money on tips and cover charges.

32. Ms. Panda, as part of her job as a cocktail waitress, approached Defendant Officers' table when she noticed they had almost empty drinks to ask if they wanted more drinks.

33. Defendant Officers responded they were not interested in ordering more drinks and asked when Ms. Clifford would be performing.

34. Defendant Officers then lewdly commented on Ms. Panda's breasts, comparing the respective sizes between Ms. Panda's and one of the female officer's breasts.

35. Ms. Panda was wearing a large bra, which covered all of her nipples and most of her breasts; underwear; leggings; and a high-waisted skirt, which covered her entire mid-section and for much of the night was tucked into the underside of her bra.

36. At the same time, Ms. Courtney Hall ("Ms. Hall"), another cocktail waitress, was servicing a table behind the one Defendant Officers occupied, when she bent over to speak to her customers. She was similarly dressed.

37. At that point, Defendant Officers commented on Ms. Hall's butt, comparing her body to Ms. Panda's by stating, "You [Ms. Panda] have the tits, and she [Ms. Hall] has the ass."

38. Because of this comment, Ms. Panda jokingly grabbed Ms. Hall's rear end.

39. At no point did Defendant Officers reveal that they were undercover officers.

40. Later in the evening, Defendant Officers approached the stage at Sirens where Ms. Walters was performing.

41. While performing that evening on stage, Ms. Walters was wearing a body suit (akin to a woman's one-piece bathing suit) over a pair of regular underwear (not a G-string), and pasties to fully cover her nipples and areola, the same outfit she always wears when performing.

42. While Ms. Walters was dancing, several of the Defendant Officers sat in the seats by the stage and began waving money in Ms. Walters' face and reaching out to initiate contact with Ms. Walters.

43. Defendant Praither would subsequently allege that during this interaction Ms. Walters bent down from the stage and put her face between Defendant Praither's breasts in an area below Defendant Praither's areole.

44. Due to the height of the stage, it would have been physically impossible for Ms. Walters to bend down far enough to put her face between Defendant Praither's breasts in an area below Defendant's areole.

45. Defendant Officers did not at this time reveal that they were undercover officers nor interact with Ms. Walters further.

46. Prior to 10:00 p.m., Defendant Officers, as V.I.P. ticket holders, entered the V.I.P. area to meet Ms. Clifford personally.

47. During the V.I.P. interaction, Defendant Praither alleged Ms. Clifford "put both hands on officers [sic] buttocks, both hands on officers [sic] breast, then put her breast in officers [sic] face."

48. Defendant Praither, based upon these allegations, arrested Ms. Clifford for such conduct, alleging a violation of R.C. 2907.40.

49. At the same time, pursuant to their conspiracy, Defendant Officers arrested Ms. Panda and Ms. Walters for alleged violations of R.C. 2907.40.

50. Defendant Officers arrested, handcuffed, detained, and transported Ms. Panda, and Ms. Walters in a police cruiser to a police staging location where they remained handcuffed in the cruiser. They were then transported to the Franklin County Correctional Center where they were placed in a holding cell, booked, fingerprinted, and photographed.

51. While at the Correctional Center, Ms. Walters was mocked by a uniformed Columbus Police Officer, who told her that things were "going to get better" for her.

52. Subsequently, Ms. Panda and Ms. Walters were taken from the Franklin County Corrections Center and again handcuffed and placed in the rear of a police cruiser. They were then transported by cruiser back to Sirens and released in the early morning hours.

53. Ms. Panda and Ms. Walters were detained for approximately six hours between their arrest and release.

54. Defendants charged Ms. Clifford, Ms. Panda, and Ms. Walters with first-degree misdemeanor violations of R.C. 2907.40(C)(2), as alleged in each individual complaint against them.

55. The Columbus Police Department Vice Unit enforces a very limited set of laws.

56. Vice Unit officers, including Defendant Officers, are intimately aware of all of the elements for the limited set of laws they are charged with enforcing.

57. In filing criminal complaints, Defendant Officers have access to and routinely use a book containing the elements of City and State criminal offenses, including the elements associated with R.C. 2907.40(C)(2).

58. A violation of R.C. 2907.40(C)(2) requires: (1) an employee who regularly appears nude or seminude; (2) at the sexually oriented business; (3) while they are nude or seminude; (4) to touch another employee, a patron, or allow themselves to be touched by a patron.

59. "Seminude" or "state of seminudity" is defined by Ohio Revised Code 2907.39(A)(12) as "a state of dress in which opaque clothing covers not more than the genitals, pubic region, and nipple of the female breast, as well as portions of the body covered by supporting straps or devices."

60. At the time Defendant Keckley filled out the complaint against Ms. Panda she was aware that at all times material Ms. Panda had been wearing her cocktail waitress uniform and was not nude or seminude at the time she touched another employee.

61. In order to arrest Ms. Panda for the violation, Defendant Keckley knowingly and intentionally made the false statement in a sworn criminal complaint that Ms. Panda was nude or seminude at the time she touched her co-worker.

62. In addition to this fabrication, in filling out the sworn criminal complaint Defendant Keckley knowingly and intentionally omitted, in order to secure Ms. Panda's arrest, the element of R.C. 2907.40(C)(2) which requires Ms. Panda to be an employee "who regularly appears nude or seminude at the sexually oriented business."

63. Ms. Panda, who was a cocktail waitress in her second day on the job, did not regularly appear nude or seminude at Sirens.

64. At the time Defendant Praither filled out the complaint against Ms. Walters she was aware that at all times material Ms. Walters had been wearing a body suit and regular underwear (not a G-String) and was not nude or seminude at the time she allegedly touched Defendant Praither in the physically impossible manner which Ms. Praither described.

65. In order to arrest Ms. Walters for the violation, Defendant Praither knowingly and intentionally made the false statement in a sworn criminal complaint that Ms. Walters was nude or seminude at the time she allegedly touched Defendant Praither.

66. Immediately following the arrests of Ms. Clifford, Ms. Panda, and Ms. Walters, at 3:47 a.m., Defendant Keckley sent an e-mail to Defendant Rosser, Defendant Praither, Detective Scott Soha, and Lieutenant Robert Kemmerling, stating, "Attached are the complaints from our arrests at Sirens" with attachments of the individual complaints against each woman.

67. At 3:50 a.m. on July 12, 2018, Defendant Keckley forwarded the above-mentioned e-mail with the attached complaints to Lieutenant Babcock, stating, "LT You're Welcome!!!!! I work Vice now !! :D It was Me, Rosser, Lancaster, and Praiter [sic]; Please Please Don't post my name on Face Book [sic] !! :D Thank me in person later."

68. Defendant Keckley asked that her name not be published on Facebook in connection with these arrests out of concern her political motivation for the arrests would be discovered.

69. At 4:03 a.m., Defendant Keckley forwarded the above-mentioned e-mail with the attached complaints to co-workers Elisabeth Beine, Lowell Whitt, Eric Poliseno, Jason Arnold,

and Jason Vore, stating, "I got elements along with Susan and Lancaster we arrested Stormy this morning, she is in jail."

70. At 4:05 a.m., Defendant Keckley forwarded the same e-mail with the attached complaints to her husband, Shane Keckley, stating, "It is all over CNN. I wanted you to know before everyone contacts you … I, Susan and Lancaster got elements and arrested Stormy Daniels this morning she is in jail."

71. Later that evening, co-worker Jason Arnold replied all to Defendant Keckley, stating, "Great job!!!! Let me know how that goes for ya…".

72. Defendant Keckley's e-mails, including the ones from the prior night showing research on Ms. Clifford, her upcoming performance at Sirens, and her affiliation with President Trump, as well as the ones post-arrest stating that she "got elements" to arrest Ms. Clifford evidence a premeditated, politically motivated reason to arrest Ms. Clifford.

73. Shortly after the arrests, Defendant Rosser deleted his "Stevo Shaboykins" Facebook profile out of concern that his political motivation for arresting Ms. Clifford would be discovered.

74. At 1:36 p.m. on July 12, 2018, Columbus Division of Police released a statement from Chief Kim Jacobs ("Chief Jacobs") which said, "Vice personnel working last night believed they had probable cause that the state law regulating sexually-oriented businesses was violated; however, one element of the law was missed in error and charges were subsequently dismissed."

75. At no point did Defendant Officers actually believe that they had probable cause to arrest Ms. Clifford, Ms. Panda, or Ms. Walters.

76. Rather, Defendant Officers were aware that they had deliberately fabricated and/or omitted the elements of R.C. 2907.40(C)(2) to make the arrests.

77. One or more of Defendant Officers made the false statement to Chief Jacobs that Defendant Officers had made an error with regards to the elements of R.C. 2907.40(C)(2).

78. Ms. Panda's and Ms. Walters' charges were dismissed at the unilateral request of the prosecutor due to lack of probable cause on July 18, 2018, six days after charges were filed against them.

79. As a result of their arrests, Ms. Panda's and Ms. Walters' names and pictures of their mugshots were repeatedly featured in print, broadcast, and online media.

80. On July 12, 2018 at 7:29 a.m., Defendant Doe 2 posted a statement on the official Twitter account for the City of Columbus Division of Police, "Columbus Ohio Police (@ColumbusPolice)," entitled "Columbus Police Make Three Arrests at Adult Entertainment Club."

81. The statement alleged, "As part of a long-term investigation into allegations of human trafficking, prostitution, along with other vice related violations, Columbus Police arrested three individuals from Club Sirens at 6190 Cleveland Ave., during the early morning hours of July 12, 2018."

82. The above-mentioned statement is a total fabrication; Defendant Officers were not at Sirens investigating any human trafficking, prostitution, or other vice related violations, nor were Ms. Walters or Ms. Panda arrests in any way related to such an "investigation".

83. At the time Defendant Doe 2, the spokesperson for the Columbus Police Public Information office, made this statement, he or she had knowledge of its falsity or was recklessly indifferent to its falsity.

84. Defendant Doe 2 recklessly failed to conduct an independent verification of the validity of the statement.

85. On July 17, 2018, Attorney Ed Hastie sent a public records request asking for the production of all complaints which formed the basis for the claim that the Vice Unit was investigating human trafficking, prostitution, or other vice related violations at Sirens.

86. In response to the public records request, only one complaint was produced.

87. The complaint produced occurred on June 19, 2018, when the Columbus Police Department received an e-mail complaint from a "concerned citizen," which stated, "I want to make you aware that when I leave for work between 6:30-6:45 in the morning that I see anywhere from 2 to 4 prostitutes right around the Cleveland ave [sic] and Case rd [sic] area."

88. The alleged early morning prostitution activity in the citizen complaint and its subsequent investigation in fact had nothing to do with Sirens, or the event Sirens hosted over a month later. The area referenced in the complaint is more than three and a half (3.5) miles away from Sirens. Further, the complained of conduct had occurred hours after Sirens is closed.

89. One or more Defendant Officers made false statements to Defendant Doe 2 that the arrests of Ms. Clifford, Ms. Panda, and Ms. Walters were made in connection with a "long-term investigation."

90. These false statements, including statements issued regarding the details of the arrest, strongly implied that Ms. Panda and Ms. Walters were engaged in prostitution, human trafficking, or vice related violations.

91. Defendant Doe 2's dissemination of the information provided by Defendant Officers furthered the conspiracy of Defendant Officers by concealing their retaliatory motive for the arrests.

92. After her arrest, Ms. Panda faced backlash from her community when someone wrote the word "whore" on an exterior door of her personal residence.

93. Ms. Walters was publicly exposed as a dancer due to her arrest, a fact her immediate family was not aware of until media came to her family home and harassed them about the arrest.

94. But for Ms. Clifford's political expression and activity and Defendant Officers' commitment to President Trump and retaliatory motivation against Ms. Clifford, no arrest, prosecution, or defamation would have been done.

95. Defendants' acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner.

96. As a proximate result of Defendants' acts, Plaintiffs have suffered and continue to suffer damages, including loss of liberty, legal and other expenses, physical pain and suffering, mental and emotional anguish, embarrassment, fear, and great inconvenience.

97. Plaintiffs' rights to be free from unlawful search and seizure and from arrest and prosecution without probable cause and/or based on false statements were, at the time of their actions or omissions, clearly established rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

**V.** **Claims for Relief**

    **A.** **First Cause of Action: False Arrest in Violation of the Fourth and Fourteenth Amendments and Ohio Common Law**

98. Paragraphs 1 through 97 above are realleged and incorporated herein.

99. By arresting Plaintiffs when, at the moment of the arrest the facts and circumstances within the knowledge of the Defendants Officers were insufficient to warrant a reasonable person to believe either Plaintiff had committed a crime, Defendant Officers committed a false arrest.

B.  **Second Cause of Action: Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments and Ohio Common Law**

100. Paragraphs 1 through 97 above are realleged and incorporated herein.

101. By making, influencing, and/or participating in the decision to prosecute Ms. Panda and Ms. Walters without probable cause, which prosecution was resolved in their favor by dismissal at the unilateral request of the prosecutor due to lack of probable cause, and doing so with knowingly or recklessly made false statements in their paperwork, Defendant Officers maliciously prosecuted Ms. Panda and Ms. Walters, resulting in their deprivation of liberty for more than five hours after their initial seizure.

C.  **Third Cause of Action: Civil Conspiracy to Violate the Fourth and Fourteenth Amendments**

102. Paragraphs 1 through 97 above are realleged and incorporated herein.

103. Defendants conspired against Ms. Panda and Ms. Walters in order to conceal their retaliation against Ms. Clifford by depriving them of their Fourth and Fourteenth Amendment rights and taking steps to further the conspiracy, such as arresting them without probable cause, unlawfully searching and seizing their persons and property, making knowingly or recklessly false statements in their paperwork, making, influencing, and/or participating in the decision to prosecute them without probable cause, and making public false defamatory statements, thereby causing Plaintiffs injury.

D.  **Fourth Cause of Action: Abuse of Process in Violation of Ohio Common Law**

104. Paragraphs 1 through 97 above are realleged and incorporated herein.

105. In the alternative, by commencing criminal prosecution in proper form and with probable cause and perverting that prosecution to retaliate against Ms. Clifford and thereby cause

Plaintiffs' injury in their efforts to conceal that retaliation, Defendant Officers committed abuse of process.

### E. Fifth Cause of Action: Defamation in Violation of Ohio Common Law

106. Paragraphs 1 through 97 above are realleged and incorporated herein.

107. By maliciously releasing false statements to public newspapers and broadcasters and on social media platforms strongly implying Ms. Panda and Ms. Walters were engaged in prostitution, human trafficking, and/or vice related violations and announcing the details of their arrests for "illegal sexually oriented activity in a sexually oriented business," Defendants defamed Ms. Panda and Ms. Walters causing injury to their reputations and exposing them to contempt, ridicule, shame, and disgrace by their communities and families.

## VI. Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

a. declare that Defendants have, through false arrest and/or malicious prosecution, violated Plaintiffs' Fourth and Fourteenth Amendment rights, conspired against Plaintiffs to violate those rights, abused process, and/or defamed them; and

b. order more than $25,000 in compensatory damages; more than $25,000 in punitive damages; prejudgment and post-judgment interest; costs; attorneys' fees, and such other relief as the Court may deem appropriate.

Respectfully submitted,

By: */s/ Edward R. Forman*
Edward R. Forman (0076651)
(*eforman@marshallforman.com*)
John S. Marshall (0015160)
(*jmarshall@marshallforman.com*)
Samuel M. Schlein (0092194)
(*sschlein@marshallforman.com*)
Helen M. Robinson (0097070)

*(hrobinson@marshallforman.com)*
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

Edward W. Hastie (0079438)
HASTIE LAW OFFICES, LLC
*(ed@hastielegal.com)*
1258 Grandview Ave., Suite B
Columbus, Ohio 43212
(614) 488-2800
Fax (614) 488-2882

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

## JURY DEMAND

Plaintiff requests a trial on all issues triable to a jury by a jury of eight (8) persons.

By: */s/ Edward R. Forman*
Edward R. Forman (0076651)